UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Marcellous Knuckles, | ) | C/A No.: 5:13-cv-00557-RBH-KDW |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Report and Recommendation |
| | ) | |
| Larry Cartledge, | ) | |
| | ) | |
| Respondent. | ) | |

Petitioner, Marcellous Knuckles ("Petitioner" or "Knuckles"), a state prisoner, filed this Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the court pursuant to 28 U.S.C. § 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c) DSC, for a Report and Recommendation on Respondent's Return and Motion for Summary Judgment. ECF Nos. 31, 32. On August 15, 2013, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Petitioner of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to Respondent's motion. ECF No. 33. Petitioner filed a response in opposition to Respondent's motion on September 6, 2013. ECF No. 36. Having carefully considered the parties' submissions and the record in this case, the undersigned recommends that Respondent's Motion for Summary Judgment, ECF No. 32, be GRANTED.

I.  Factual Background

Petitioner is currently incarcerated in the Tyger River Correctional Institution of the South Carolina Department of Corrections ("SCDC"). In 2003, Petitioner was indicted in the

September term of the Cherokee County Grand Jury for Armed Robbery. App. 305, 307.[1] On November 6-8, 2008 a jury trial was conducted before the Honorable J. Mark Hayes III in Gaffney, South Carolina. App. 1-249. Attorney Bill Rhoden represented Petitioner, and Attorney Kim Leskanic represented the State. App. 1, 6. On November 8, 2008, Petitioner was convicted as indicted and was sentenced to fifteen years imprisonment. App. 239, 249.

II.     Procedural History

Trial counsel timely filed and served the Notice of Appeal. Petitioner filed the Final *Anders*[2] Brief of Appellant on May 20, 2008. App. 314-320. On February 4, 2009, Petitioner filed an Affidavit with the South Carolina Court of Appeals attesting that he wished to drop his appeal. App. 323. On February 23, 2009, the South Carolina Court of Appeals issued an order dismissing Petitioner's appeal and remitting the case to the Clerk of Court for Cherokee County. App. 310.

On January 9, 2009,[3] Petitioner filed an application seeking post-conviction relief ("PCR"). App. 251-258. The State filed its Return on August 14, 2009. App. 259-63. On November 3, 2009, an evidentiary hearing was conducted before the Honorable William H. Seals, Jr. in Spartanburg, South Carolina. App. 264. Petitioner was represented by Shawn M. Campbell, Esq., while the State was represented by Assistant Attorney General Mary S. Williams. *Id.* Petitioner; and Petitioner's former trial counsel, William G. Rhoden, testified at the hearing. App. 267-92. On December 31, 2009, the PCR court issued an order denying Petitioner relief and making the following findings of fact and conclusions of law:

---

[1] Citations to "App." refer to the Appendix for Petitioner's appeal of his judgment of conviction. That appendix is available at ECF Nos. 31-13 and 31-14 in this habeas matter.
[2] *Anders v. California*, 386 U.S. 738 (1967).
[3] The verification for the application, signed by Petitioner, has an attestation date of January 5, 2008, App. 256, however the file stamped date is January 9, 2009.

FINDINGS OF FACT AND CONCLUSIONS OF LAW

This Court has had the opportunity to review the record in its entirety and has heard the testimony and arguments presented at the PCR hearing. This Court has further had the opportunity to observe each witness who testified at the hearing, and to closely pass upon their credibility. This Court has weighed the testimony accordingly. Set forth below are the relevant findings of fact and conclusions of law as required by S.C. Code Ann. § 17-27-80 (2003).

## Ineffective Assistance of Counsel

The Applicant alleges he received ineffective assistance of counsel. In a PCR action, "[t]he burden of proof is on the applicant to prove his allegations by a preponderance of the evidence." Frasier v. State, 351 S.C. 385,389, 570 S.E.2d 172, 174 (2002) (citing Rule 71. 1(e), SCRCP). Where ineffective assistance of counsel is alleged as a ground for relief, the Applicant must prove that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 692 (1984); Butler v. State, 286 S.C. 441, 334 S.E.2d 813 (1985).

The proper measure of performance is whether the attorney provided representation within the range of competence required in criminal cases. Courts presume that counsel rendered adequate assistance and made all significant, decisions in the exercise of reasonable professional judgment. Butler, Id. The Applicant must overcome this presumption to receive relief. Cherry v. State, 300 S.C. 115, 386 S.E.2d 624 (1989).

First, the Applicant must prove that counsel's performance was deficient. Under this prong, attorney performance is measured by its "reasonableness under professional norms." Cherry, 300 S.C. at 117, 385 S.E.2d at 625, citing Strickland. Second, counsel's deficient performance must have prejudiced the Applicant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Cherry, 300 S.C. at 117-18, 386 S.E.2d at 625. "A reasonable probability is a probability sufficient to undermine confidence in the outcome of trial." Johnson v. State, 325 S.C. 182, 186, 480 S.E.2d 733, 735 (1997) (citing Strickland).

The Applicant testified that counsel met with him a couple of times before trial. When asked if he maintained throughout the trial that he was not the one who committed the armed robbery, and that he was somewhere else, the Applicant answered affirmatively. Applicant also testified that the police never found shoe prints, fingerprints, or a witness who could place him at the scene. The Applicant also testified that he told Joseph Wilson something about a robbery, but that the State had already played the videotape of the robbery for Wilson before

Wilson testified at the trial. He also stated that his co-defendant testified at trial that he could not remember who was with him the night of the armed robbery.

The Applicant also stated that he testified at trial that he was at work on the day of the armed robbery. He testified that counsel did not ask for an alibi jury charge, that the judge did not inquire as to whether counsel wanted an alibi jury charge, and that it was a close case. When asked whether he felt prejudiced by not having an alibi jury charge, Applicant testified that he did feel prejudiced "because they never told the jury my alibi." Applicant stated he believed the jury would have found him not guilty if they have been given an alibi jury charge.

On cross-examination, the Applicant testified that he could not remember when he told counsel that he was working on the day of the robbery, but that he denied his involvement in armed robbery every time counsel came to visit him. When asked if he recalled his direct examination testimony at trial that he did not remember where he was on January 18, 2006, the Applicant stated that he could not recall giving that answer during counsel's direct examination, but that he would not dispute the trial transcript. The Applicant also stated that he could not recall what time the victim said the crime occurred.

The Applicant testified that he was not present the night of the armed robbery. Applicant read a portion of his testimony from his cross-examination in the trial transcript, from which he stated "I can't say where I was January 18th." (P. 177, line 20). The transcript also shows that Applicant later stated "I was employed at Evergreen at the time in Blacksburg, a landscape company, and I didn't get off until 7:00." During re-cross examination, the Applicant conceded that he testified at trial that he did not know where he was before telling the Solicitor that he was at work that day.

Counsel testified that he has practiced law for over twenty-eight (28) years, and that he was appointed to represent the Applicant on June 7, 2006. Counsel testified that the Applicant was in jail when he was appointed to the case, and that it is consistent with his practice to educate himself about the case before speaking with a new client. Counsel obtained and reviewed much of the discovery material in this case before meeting with Applicant. Specifically, Counsel stated that he filed discovery motions, and he received discovery material from the Solicitor's Office on July 12, 2006.

Counsel stated that he met the Applicant for the first time on August 1, 2006, and reviewed Applicant's version of what happened that day. Counsel testified that the Applicant did tell him he had been employed at Evergreen, but that the Applicant never mentioned being at work the day the robbery occurred. Counsel further stated that after meeting with the Applicant, he learned of additional discovery, the videotape of the robbery, which he then requested from the Solicitor's Office. Counsel testified that he reviewed all of the discovery that he had at that time with the Applicant.

Counsel testified that he met with the Applicant again on October 25, 2006 after he received and reviewed discovery material. He testified further that he met with the prosecutor to verify that he had all of the discovery material, and determined that he was still missing discovery material. Counsel stated that he met with Sheryl Bland, the attorney representing the Applicant's co-defendant, to discuss the case, and that he met with the Applicant again after that meeting on November 1, 2006. Counsel testified that he spoke to Barbara Fernandez, a friend of the Applicant's, and that on November 3, 2006 he spoke with Sheryl Bland and the prosecutor again, as well as another co-defendant (Scott Robinson).

Counsel testified further that "alibi" was never a defense theory in this case because the Applicant never told him he was at work on the day of the robbery. The crime occurred sometime after 7 p.m. in January of 2006. Counsel testified that the Applicant never told him that he was working, and that he only ever insisted that he "didn't have anything to do with it." Counsel testified that, instead, their defense theory was that, because the Applicant was not arrested until four (4) months after the incident occurred, that he did not remember where he was, and that it would not be unusual for him to not remember where he was on a certain day four months ago. Counsel explained that while Applicant had prior convictions for shoplifting, Counsel felt that it was important for Applicant to testify. Counsel believed that Applicant's testimony was necessary to refute the testimony of Joseph Wilson ("Wilson"), a jailhouse "snitch," who claimed that Applicant had bragged about the robbery.

Counsel recalled that on direct examination, Applicant testified that he was not at the store on the night of the robbery. Applicant initially testified that he was unable to recall his whereabouts on the day of the robbery. To Counsel's surprise, Applicant testified on cross-examination that he was at work on the day of the robbery until 7:00 pm. Applicant had never told Counsel that he was at work on the day in question.

During the PCR hearing, counsel's attention was directed to the trial transcript from which he read that, when first asked on cross-examination where he was the day of the robbery, the Applicant first answered "I can't say where I was on January 18th, that's been six months ago, but I know that I wasn't present in that store." (TT. p. 177, line 24). Counsel continued to read from the same excerpt from the trial transcript, and indicated that it was not until later that the Applicant testified to being at work that day. Counsel testified that if the Applicant's testimony were true, his testimony could have put him in a different location, but that the first time he heard about it was on cross-examination during trial.

On cross-examination at the hearing, counsel stated that it was a close case because there was no physical evidence connecting the Applicant to the crime, and that he argued that at trial. Counsel noted that there was no witness

identification. Counsel further noted that the State's witness, Wilson, labeled as a jailhouse snitch, saw the surveillance videotape from the store before testifying at trial and hoped to get a deal in exchange for his testimony. Counsel also recalled that the Applicant's co-defendant, Laquinton Foster, testified at trial that he could not remember who was with him when he committed the armed robbery because he was "high" at the time he and others committed the armed robbery. Counsel stated that the location where Applicant claimed to be working on the day of the robbery was approximately an hour away. Counsel felt strongly that Applicant's story about working lacked credibility, however, Counsel noted that Applicant claimed to be working outdoors, and it would have been dark long before Applicant claimed to have ended his workday.

In closing, Counsel did argue:

> Nevertheless, Mr. Knuckles gets up on the witness stand and he testified and he said to you, 'I did not rob that store.' He says to you 'I was working in landscaping and I didn't get off until around 7:00 because we were on the job doing fencing.' This is an uncontradicted fact in this case. (TT p. 207, lines 2-7).

Counsel testified that he mentioned the issue because the Applicant brought it up on cross-examination and because it was uncontradicted testimony. Counsel also stated that he never gave the prosecutor any notice of an alibi defense because the Applicant never told him anything about a potential alibi at any time prior to his testimony on cross-examination.

Counsel testified that he did not ask for an alibi jury charge, but that he considered it because of the Applicant's testimony on cross-examination. Counsel stated that he ultimately decided not to ask for the alibi jury charge because he believed that the Applicant's testimony at trial did not help him, and that he thought requesting an alibi jury charge would emphasize a part of the case, the Applicant's testimony, that he considered weak and not believable.

This Court finds in regards to the allegation of ineffective assistance of counsel, the Applicant's testimony is not credible, while also finding trial counsel's testimony is credible. Specifically, this Court finds Applicant's inconsistent testimony that he told Counsel prior to trial that he was working the night of the armed robbery to not be credible. Also, this Court finds Applicant's testimony regarding his overall involvement in the crime, because of the inconsistencies, to not be credible either. This Court further finds that, even if counsel were ineffective for not requesting an alibi charge in this particular case, the Applicant was not prejudiced by his failure to do so.

According to the record and testimony at the hearing, this Court believes that counsel is a competent and experienced attorney who was properly prepared

for trial and who would have presented an alibi defense if the Applicant had mentioned an alibi to him prior to trial. The Applicant testified on numerous occasions at trial that he could not remember where he was the night of the robbery, and it was not until the prosecutor asked him four times during cross-examination how he knew he was not in the store that day that the Applicant first mentioned to anyone that he was working during the time of the armed robbery. It is clear that the Applicant's alibi came out on cross-examination as an afterthought. There were no witnesses to support the Applicant's story, and trial counsel did the best he could with the information the Applicant gave him, being that he simply "was not present." Counsel did testify that he considered requesting an alibi jury charge, and ultimately decided not to despite the Applicant's testimony and his use of that testimony in his closing. Due to Counsel's concerns with the credibility of Applicant's purported alibi, Counsel's decision not to emphasize that portion of the testimony was a reasonable one.

This Court finds that Applicant's testimony was not sufficient to warrant an alibi charge. "To establish alibi, the accused must show that he was at another specified place at the time the crime was committed thus making it impossible for him to have been at the scene of the crime. . . Mere denial of one's presence at the scene of a crime does not constitute alibi." State v. Diamond, 280 S.C. 296, 297, 312 S.E.2d 550, 550 (1984). "... [B]y an alibi, an accused attempts to prove that he was at a place so distant that his participation in the crime was impossible." State v. Robbins, 275 S.C. 273, 275, 271 S.E.2d 319, 320 (1980). "It is not enough for the accused to say he was not at the scene and must therefore, have been elsewhere. Alibi involves physical impossibility." Id. Applicant testified that he was working in Chester until 7 p.m.; however, the time of the armed robbery was never conclusively established other than determining it occurred after 7 p.m. Therefore, Applicant's testimony that he was working until 7 p.m. did not preclude his participation in the armed robbery. Applicant failed to establish that it was physically impossible for him to have been at the scene of the crime. Therefore, his alibi defense was an imperfect one, an alibi charge was not warranted by the evidence, and counsel's performance in failing to request the charge was not deficient. See State v. Diamond, 280 S.C. at 296, 297, 312 S.E.2d at 550.

Moreover, the Applicant also failed to meet the second Strickland prong. The Applicant must be able to establish within a reasonable probability that but for counsel's failure to request an alibi instruction, the result of the trial would have been different. Ford v. State, 314 S.C. 245, 442 S.E.2d 604 (1994); Riddle v. State, 308 S.C. 361, 418 S.E.2d 308 (1992). The Applicant stated his alleged alibi on the witness stand at trial for the jury to hear. He was cross-examined extensively about his alleged alibi. Furthermore, counsel argued his alleged alibi defense during his closing argument; the jury heard it again and had it before them to consider. As Counsel stated, Applicant's purported "alibi" lacked credibility. The jury also heard from the State's witness, and was aware that he was labeled a "jailhouse snitch." The jury heard all of this testimony, had before it

> the Applicant's alleged alibi, considered it, and a made a decision to find the Applicant guilty. Additionally, the Applicant was not entitled to an alibi instruction based upon the evidence of the case. The request, had it been made by counsel, would not have been properly granted by the trial judge. Therefore, there is no reasonable probability that the result of the trial would have been different had counsel requested the alibi charge.
>
> Accordingly, this Court finds the Applicant has failed to prove the second prong of the <u>Strickland</u> test - that he was prejudiced by trial counsel's performance. Thus, it is the finding of this Court that a Judge merely charging the jury on what has already been fully aired out in trial would not have changed the result of the Applicant's trial. Therefore, the Applicant's allegation is hereby denied.
>
> <u>CONCLUSION</u>
>
> Based on all the foregoing, this Court finds and concludes that the Applicant has not established any constitutional violations or deprivations that would require this court to grant his application. Therefore, this application for post conviction relief must be denied and dismissed with prejudice.

App. 295-303. On November 2, 2010, Petitioner, represented by Robert M. Pachak, Esquire, of the South Carolina Commission on Indigent Defense, timely filed a Petition for Writ of Certiorari. ECF No. 31-6. The Petition argued the following ground: "Whether defense counsel was ineffective in failing to request an alibi charge when there was evidence that petitioner was not at the scene of the armed robbery and that he was at work at a landscape company?" *Id.* at 3. The State filed its Return to the Petition for Writ of Certiorari on February 17, 2011. ECF No. 31-7. On January 13, 2012, the South Carolina Supreme Court entered an order transferring the Petition to the South Carolina Court of Appeals. ECF No. 31-8. On November 14, 2012, the South Carolina Court of Appeals entered an ordering denying the Petition. ECF No. 31-9. The Remittitur was issued on December 5, 2012. ECF No. 31-11. On December 3, 2012, Petitioner filed a pro se Petition for Writ of Certiorari with the South Carolina Supreme Court that was denied on December 13, 2012. ECF Nos. 31-10, 31-12. This Petition for habeas corpus followed on March 4, 2013. ECF No. 1.

III. Discussion

A. Federal Habeas Issues

Petitioner raises the following issues in his federal Petition for a writ of habeas corpus, quoted verbatim:

**GROUND ONE**: Applicant was denied the right to effective assistance of counsel guaranteed by the sixth and fourteenth amendment to the United States Constitution. Trial counsel failure to call alibi defense witnesses.

**GROUND FOUR:** Counsel failed to put up alibi defense witnesses.

ECF No. 1 at 5, 10.

B. Standard for Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts

that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

    C.  Habeas Corpus Standard of Review

      1. Generally

Because Petitioner filed his Petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2); *see Williams v. Taylor*, 529 U.S. 362, 399 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. Moreover, state court

factual determinations are presumed to be correct and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

2. Procedural Bar

Federal law establishes this court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States[,]" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. *Id.* The separate but related theories of exhaustion and procedural bypass operate in a similar manner to require that a habeas petitioner first submit his claims for relief to the state courts. A habeas corpus petition filed in this court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

a. Exhaustion

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

(b) (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that—

    (A) the applicant has exhausted the remedies available in the courts of the State; or

    (B) (i) there is an absence of available State corrective process; or

        (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

> (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254.

The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. 28 U.S.C. § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must fairly present his claims to the state's highest court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997). Thus, a federal court may consider only those issues that have been properly presented to the highest state courts with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal; or (2) by filing an application for PCR. State law requires that all grounds be stated in the direct appeal or PCR application. Rule 203 SCACR; S.C. Code Ann. § 17-27-10, *et seq.*; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767, 770 (S.C. 1976). If the PCR court fails to address a claim as is required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP. Failure to do so will result in the application of a procedural bar by the South Carolina Supreme Court. *Marlar v. State*, 653 S.E.2d 266, 267 (S.C. 2007). Strict time deadlines govern direct appeals and the filing of a PCR in the South Carolina courts. A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

Furthermore, in filing a petition for habeas relief in the federal court, a petitioner may present only those issues that were presented to the South Carolina Supreme Court or the South Carolina Court of Appeals. *See State v. McKennedy*, 559 S.E.2d 850, 853 (S.C. 2002) (holding "that in all appeals from criminal convictions or post-conviction relief matters, a litigant shall not be required to petition for rehearing and certiorari following an adverse decision of the Court of Appeals in order to be deemed to have exhausted all available state remedies respecting a claim of error.") (quoting *In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief*, 471 S.E.2d 454, 454 (S.C. 1990)).

    b.  Procedural Bypass

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner who seeks habeas corpus relief as to an issue failed to raise that issue at the appropriate time in state court and has no further means of bringing that issue before the state courts. In such a situation, the person has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. Procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings if the state has procedural rules that bar its courts from considering claims not raised in a timely fashion.

The South Carolina Supreme Court will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. As the Supreme Court explains:

> . . . [state procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed v. Ross*, 468 U.S. 1, 10-11 (1984).

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule[,]" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith v. Murray*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 23, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. *See Matthews v. Evatt*, 105 F.3d at 915 (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991); *Teague v. Lane*, 489 U.S. 288, 297-98 (1989); *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996).

### 3. Cause and Actual Prejudice

Because the requirement of exhaustion is not jurisdictional, this court may consider claims that have not been presented to the South Carolina Supreme Court in limited circumstances in which a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. *Murray v. Carrier*, 477 U.S. at 496-97. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor that hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Coleman*, 501 U.S. at 752-53; *Murray v. Carrier*, 477 U.S. at 488-89. Absent a showing of cause, the court is not required to consider actual prejudice. *Turner v.*

*Jabe*, 58 F.3d 924, 931 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray v. Carrier*, 477 U.S. at 503-506. To show actual prejudice, the petitioner must demonstrate more than plain error.

        4.        Ineffective Assistance of Counsel Claims

To prevail on an ineffective assistance of counsel claim, a petitioner must show (1) that his trial counsel's performance fell below an objective standard of reasonableness, and (2) that a reasonable probability exists that but for counsel's error, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1985). Petitioner bears the burden of proving an error and prejudice in his ineffective assistance of counsel claim. *Id.* at 696.

        D.        Analysis

Petitioner argues, in Grounds One and Four of his habeas Petition,[4] that his trial counsel was ineffective in failing to call alibi defense witnesses. ECF No. 1. Respondent contends that the Petition must be dismissed as this ground was procedurally defaulted because it was never raised in state court. ECF No. 31 at 9-10.

The undersigned has reviewed the Petitioner's PCR application, the PCR hearing transcript, and the PCR court's Order of Dismissal and finds that Petitioner's claims concerning trial counsel's ineffectiveness for failing to offer alibi defense witnesses was not presented to or ruled on by the PCR court. Therefore, this issue is procedurally barred from federal habeas review. *See Yeatts v. Angelone,* 166 F.3d 255, 261 (4th Cir.1999); *see also* S.C. Code Ann. § 17–27–90, –45; *Aice v. State*, 409 S.E.2d 392, 394 (S.C. 1991); SCACR 203(d)(3), 243. Accordingly, Petitioner has bypassed his state remedies and, as such, is procedurally barred from raising Grounds One and Four of his habeas Petition unless he can demonstrate cause for failure

---

[4] The Petition does not contain Grounds Two or Three. See ECF No. 1 at 7-8.

to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. *Murray v. Carrier*, 477 U.S. at 495-96.

Claims of actual innocence are often used to attempt to satisfy the "miscarriage of justice" exception to a procedural default. *See Schlup v. Delo*, 513 U.S. 298, 314-15 (1995). A petitioner claiming actual innocence "must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *House v. Bell*, 547 U.S. 518, 536-37 (2006) (quoting *Schlup*, 513 U.S. at 327). This "standard is demanding and permits review only in the 'extraordinary' case." *Id.* at 538 (quoting *Schlup*, 513 U.S. at 327 (internal quotations and citations omitted)). Also, Petitioner would have to show "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998).

In his Response to Respondent's summary judgment motion, Petitioner contends that he is actually innocent of the armed robbery conviction as there was "no physical evidence linking [him] to the crime of armed robbery on January 18, 2006." ECF No. 36 at 2- 3. Petitioner alleges that he can show cause and prejudice in support of his actual innocence claim and argues in support of his "cause" argument that "[i]n the applicant's case all evidence use by the state of South Carolina submitted to the grand jury is disfavored and false evidence and the state failed to prove the guilt of the defendant; at trial." ECF No. 36 at 4. To show that he was prejudiced, Petitioner contends that he "was deprived of his liberty to a fair trial by the state of South Carolina; use false evidence get a conviction." *Id.* Petitioner avers that the "State could not prove that [he] was presence at the scene of the crime at the time it was committed is obviously an essential element of the State's case, and the burden rests upon the State to prove his presence." ECF No. 36 at 5. Petitioner argues that the "evidence, viewed as a whole creates the

inference that [Petitioner] submitting to the court that he was elsewhere at the time of the armed robbery." *Id.*

The undersigned finds that Petitioner's argument that this court should excuse his default because he is actually innocent of the crimes for which he was convicted is without merit. In this matter, Petitioner has not offered any new evidence to support an "actual innocence" claim and instead argues that he is actually innocent of the armed robbery charge because there was no physical evidence that connected him to the crime. Although Peitioner is correct about the lack of physical evidence, Petitioner's argument completely disregards testimony offered during his trial from a jail house snitch that Petitioner bragged to him that he was one of the three men that participated in the armed robbery. Accordingly, Petitioner's claims are procedurally barred and the undersigned recommends that the Respondent's Motion for Summary Judgment be granted.[5]

IV.  Conclusion

For the foregoing reasons, the court recommends that Respondent's Motion for Summary Judgment, ECF No. 32, be GRANTED and the habeas Petition be DISMISSED with prejudice.

IT IS SO RECOMMENDED.

October 11, 2013  
Florence, South Carolina

Kaymani D. West  
United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

---

[5] The Fourth Circuit has stated that once a claim is determined to be procedurally barred, the court should not consider the issue on its merits. *Kornahrens v. Evatt*, 66 F.3d 1350 (4th Cir. 1995). Accordingly, the undersigned will not discuss the merits.